UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aaron O. Menze,  Case No. 24-cv-1243 (PJS/LIB)

    Plaintiff,

v.

**REPORT AND RECOMMENDATION**

County of Otter Tail, et al.,

    Defendants.

This matter comes before the undersigned United States Magistrate Judge upon Defendants' Motion to Dismiss, [Docket No. 5], and Plaintiff's Motion for Injunctive Relief, [Docket No. 22], which were referred to the undersigned United States Magistrate Judge by the Honorable Patrick J. Schiltz. (Order of Referral [Docket No. 6]). Following a Motions Hearing, the Court took the parties' Motions under advisement.

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 5], be **GRANTED in part** and **DENIED in part** and that Plaintiff's Motion for Injunctive Relief, [Docket No. 22], be **DENIED**.

I.    Background[1]

At the time he initiated this proceeding, Plaintiff owned or had interest in at least sixty-six (66) parcels of real property in Otter Tail County. Otter Tail County Auditor v. Menze, 56-cv-23-844, Order [Docket No. 15] at 2 (Minn. D. Ct. June 12, 2023). Plaintiff alleges that in

---

[1] The facts contained in this section are taken from Plaintiff's Complaint, [Docket No. 1], as well as, documents and judicial records implicitly referenced in Plaintiff's Complaint and matters of public record, including various State Court Orders from the State Court proceedings referenced in Plaintiff's Complaint. Generally, in evaluating a complaint, materials outside the pleading cannot be considered on a motion to dismiss. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a Court "may consider the pleadings themselves, exhibits attached to the pleadings, and matters of public record" such as judicial records. See, e.g., Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003); Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

2019 he began "questioning" the validity of the Otter Tail County Auditor's tax assessment claims being made upon Plaintiff's parcels of real property. (Compl [Docket No. 1] at 5).

On November 18, 2020, Plaintiff submitted a request to Otter Tail County officials seeking information from Otter Tail County "that would substantiate the County of Otter Tail's tax liability claims being made upon Plaintiff's private property." (Id. at 6). With this request for information, Plaintiff provided a check for the "full assessed tax liability . . . with the stipulation that the requested information would be forthcoming to substantiate the assessed tax liability." (Id.).[2] Plaintiff also submitted to Otter Tail County officials "an exemption application claiming said property was not the subject of the statutory taxing scheme as a general practice." (Id.).

The Otter Tail County Assessor responded to Plaintiff's requests on December 2, 2020. (Id.). The Otter Tail County Assessor's response included information and documentation underlying the tax assessments on Plaintiff's real property, as well as, a letter denying Plaintiff's application for property tax exemption status. (Id.).

Plaintiff then "served notarized offers to settle the controversy created by Defendant's [sic] unsubstantiated claims" in November 2020 and May 2021. (Id. at 6–7). Plaintiff alleges that Defendants never responded to his "offers to settle." (Id.).

On March 31, 2022, Plaintiff initiated litigation against Otter Tail County in Minnesota State Court ("First State Court Action"). Menze v. Otter Tail County, 56-cv-22-718, Initial Pleading [Docket No. 1] (Minn. D. Ct. Mar. 31, 2022). In that case, Plaintiff alleged that Otter Tail County had failed to demonstrate that it retained the authority necessary to subject

---

[2] It is not evident from the record alone whether Plaintiff still maintains an outstanding tax liability to Otter Tail County. (See Id.). Throughout his pleading, Plaintiff alleges that he submitted multiple checks to Otter Tail County for the "full assessed tax liability," but he does not provide information regarding the value of the tax liability assessed against his real property or the total amount he paid to Otter Tail County. (See Id.). Moreover, he alleges that taxes were assessed against his real property at various times after he submitted checks to Otter Tail County. The question of whether Plaintiff has fully satisfied the tax liability assessed against his real property is not germane to the issues now before the Court, and the issue of whether Plaintiff has satisfied the tax liability assessed against his real property does not affect the disposition recommended herein.

Plaintiff's real property to taxation. See Id. Through the First State Court Action, Plaintiff sought an order requiring Otter Tail County to "substantiate" its claim that Plaintiff had a tax liability. See Id.; Menze v. Otter Tail County, 56-cv-22-718, Order [Docket No. 28] (Minn. D. Ct. Sept. 26, 2022). Plaintiff's argument in support of his claims in the First State Court Action were materially similar to his arguments in the present case: Otter Tail County lacks the authority and jurisdiction necessary to assess taxes against Plaintiff's real property unless Otter Tail County first "substantiates" its authority to do so by demonstrating a "nexus or situs" over Plaintiff and his real property. See Menze v. Otter Tail County, 56-cv-22-718, Initial Pleading [Docket No. 1] (Minn. D. Ct. Mar. 31, 2022). On September 26, 2022, the Minnesota State Court issued an Order dismissing the First State Court Action upon finding that Plaintiff had failed to state a claim upon which relief may be granted. Menze v. Otter Tail County, 56-cv-22-718, Order [Docket No. 28] (Minn. D. Ct. Sept. 26, 2022). Plaintiff did not appeal the dismissal of the First State Court Action to the Minnesota Court of Appeals.

On March 29, 2023, a "Delinquent Real Property Tax List and Notices" was published in the New York Mills Dispatch, a biweekly periodical in New York Mills, Minnesota. (Compl. [Docket No. 1] at 28). Plaintiff alleges that his name and real property were included in that listing. (Id. at 28–29). Plaintiff further alleges that persons who were interested in purchasing some of his real property contacted Plaintiff's relator about his name being on the list of delinquent taxpayers. (Id. at 29).

On March 20, 2023, Plaintiff initiated an action in Minnesota State Court against the Otter Tail County Auditor-Treasurer ("Second State Court Action"). Menze v. Otter Tail County Auditor-Treasurer, 56-cv-23-582, Initial Pleading [Docket No. 2] (Minn. D. Ct. March 20, 2023). Plaintiff's initial pleading in the Second State Court Action purported to inform the Court that

the Second State Court Action was partially a continuation or extension of the First State Court Action. See Id. Through the Second State Court Action, Plaintiff sought to "quash" the "unsubstantiated" tax liabilities Otter Tail County had assessed upon his real property. Id. at 6.

On April 13, 2023, the Minnesota State Court sua sponte issued an Order dismissing the Second State Court Action. Menze v. Otter Tail County Auditor-Treasurer, 56-cv-23-582, Order [Docket No. 12] (Minn. D. Ct. April 13, 2023). The Minnesota State Court construed Plaintiff's initial pleading in the Second State Court Action as a motion to reconsider the State Court's prior ruling dismissing the First State Court Action. Id. The Court denied the motion to reconsider and dismissed the Second State Court Action because Plaintiff merely raised the same arguments he raised in the First State Court Action and because he had failed to demonstrate that his real property was exempt from taxation or that the taxation of his property was illegal. Id.

At some unspecified time prior to April 19, 2023, Otter Tail County officials served upon Plaintiff a notice of taxation which informed Plaintiff that Otter Tail County was attempting to reduce his delinquent tax obligations to judgment and informed him how to object to such judgment being entered. See Otter Tail County Auditor-Treasurer v. Menze, 56-cv-23-844, Order [Docket No. 15] (Minn. D. Ct. June 12, 2023). On April 19, 2023, Plaintiff filed a document in Minnesota State Court which the Minnesota State Court construed as an Answer to Otter Tail County's notice of taxation as allowed under Minn. Stat. § 279.15 which by statute initiated an action to determine whether the tax assessment against Plaintiff's 66 parcels of real property could be reduced to judgment ("Third State Court Action"). See Otter Tail County Auditor-Treasurer v. Menze, 56-cv-23-844, Order [Docket No. 15] (Minn. D. Ct. June 12, 2023).[3] In support of his continued assertion that his real property was not subject to taxation

---

[3] "Any person having any estate, right, title, or interest in, or lien upon, any parcel of land embraced in such list as published, within 20 days after the last publication of the notice, may file with the court administrator of the district

4

without Otter Tail County first "substantiating" its right to tax his real property, Plaintiff continued to raise the same arguments he raised in the First State Court Action and the Second State Court Action. See Id. at 2.

Following a Bench Trial, the Minnesota State Court issued an Order, dated June 12, 2023, finding that Plaintiff had failed to overcome the presumption that his property was taxable and failed to raise any legitimate or cognizable legal argument in support of his assertion that his property was not subject to taxation. Id. at 5. The Minnesota State Court specifically found that Plaintiff's at-issue, real property was not exempt from taxation, and therefore, Plaintiff's real property was subject to taxation by Otter Tail County. Id. The Minnesota State Court's June 12, 2023, Order sustained all taxes and penalties which had been assessed against Plaintiff's at issue real property. Id. at 5–6. On October 13, 2023, the Minnesota State Court entered judgment in the Third State Court Action, thereby reducing Plaintiff's delinquent tax obligation to judgment. See Otter Tail County Auditor-Treasurer v. Menze, 56-cv-23-844, Judgment [Docket No. 16] (Minn. D. Ct. June 13, 2023).

Following the entry of Judgement in the Third State Court Action, Plaintiff continued to file documents in the Third State Court Action. See Otter Tail County Auditor-Treasurer v. Menze, 56-cv-23-844, Order [Docket No. 30] at 3 (Minn. D. Ct. October 10, 2023). On October 10, 2023, the Minnesota State Court declared Plaintiff a "frivolous" litigant and imposed monetary conditions on his ability to file future proceedings in Minnesota State Court. Id.

On April 9, 2024, Plaintiff initiated this present action by filing his Complaint. [Docket No. 1]. Plaintiff's Complaint names three defendants: the County of Otter Tail; Wayne Stein, in his individual capacity and in his official capacity as the Otter Tail County Auditor-Treasurer;

---

court an answer setting forth a defense or objection to the tax or penalty against such parcel of land." Minn. Stat. § 279.15.

5

and Heather Jacobson, in her official capacity as the Otter Tail County Assessor. (Compl. [Docket No. 1]). Plaintiff alleges that this Court has subject matter jurisdiction over his claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)(4), and 1367. (See Compl. [Docket No. 1] at 3).

Based on the allegations in his Complaint, Plaintiff raises thirteen purported causes of action. (Id. at 18–30). Those purported causes of action are as follows: "Defendant's [sic] loss of implied immunity [and] Personally Liable"; "Conversion—Misapplication of Legislative Intent/Law"; "Conversion–Absent Eminent Domain"; "Conversion–Involuntary Servitude"; "Conversion–Without Due Process"; "Bill of Attainder"; "Application of Ex Post Facto Law"; "Breach of Trust–Fiduciary Obligation"; "Breach of Constructive Trust—Abuse of Power and Public Funds"; "Breach of Trust–Defendant's Private Duty of Care"; "Defamation"; "Reverse Discriminatory Animus–'Interested Persons'"; and "Breach of Trust: Private–Public Relationship." (Id.).

Although Plaintiff various purported claims bear different titles, all of Plaintiff's causes of action arise out of his claim that Otter Tail County lacks the appropriate "jurisdiction" or "authority" to assess taxes upon his real property without Otter Tail County first "substantiating" its right to tax said real property. (See Id.). Plaintiff also argues that it is constitutionally improper for Otter Tail County to assess taxes upon Plaintiff's real property because said tax is not a "direct tax." (Id. at 13–14).

**II.   Defendant's Motion to Dismiss. [Docket No. 5].**

Through their present Motion to Dismiss, Defendants request that Plaintiff's Complaint be dismissed with prejudice. (Defs.' Mem. [Docket No. 11]; Proposed Order [Docket No. 13]). In support of this request, Defendants argue that Plaintiff's Complaint fails to state a claim upon

6

which relief may be granted, is violative of the Rooker-Feldman[4] doctrine, and improperly attempts to utilize 42 U.S.C. § 1983 as a mechanism to enforce a state statute. (See Defs.' Mem. [Docket No. 11]).

Plaintiff argues that each of Defendants' arguments is unavailing. (See Plf.'s Mem. [Docket No. 16]). In support of his argument, Plaintiff reasserts the same argument he raised in each of his three prior actions in Minnesota State Court: Otter Tail County lacks the "jurisdiction" or "authority" to assesses taxes against Plaintiff's real property without Otter Tail County first "substantiating" its right to tax Plaintiff's real property by demonstrating a "nexus or situs" over Plaintiff and his real property. (See Id.).

**A. Standard of Review**

Federal Courts have limited jurisdiction and may only hear matters which fall within the jurisdiction of the Federal Courts. Marine Equipment Management Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993) ("Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.").[5] This creates in the Federal Courts a self-imposed duty to inquire whether the prerequisite of subject matter jurisdiction has been satisfied in every case before them. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); Gonzalez v. Thaler, 132 S. Ct. 641, 649 (2012). Subject matter jurisdiction can never be waived or forfeited, and it can be addressed at any stage of litigation. See Gonzalez, 132 S. Ct. at 649. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3);

---

[4] D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923).

[5] A federal district court may have subject matter jurisdiction based on either federal question jurisdiction, 28 U.S.C. § 1331, or based on diversity of citizenship, 28 U.S.C. § 1332. Under § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under § 1332, "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost, and is between—(1) citizens of different States . . . ." 28 U.S.C. § 1332.

7

see Bergeron v. Freeway Towing, 23-cv-3638 (WMW/LIB), Order [Docket No. 3] (D. Minn. Nov. 30, 2023).

It is the burden of the party asserting jurisdiction to establish that subject matter jurisdiction exists. See Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990); Biscanin v. Merrill Lynch & Co., Inc., 407 F.3d 905, 907 (8th Cir. 2005); Hagans v. Lavin, 415 U.S. 528, 537–38 (1974). However, merely because a plaintiff states in the complaint that the Court has subject matter jurisdiction does not make it so. Biscanin, 407 F.3d at 907 (citing Hagans, 415 U.S. at 537–38). It is the burden of the party asserting jurisdiction to allege facts which demonstrate the existence of subject matter jurisdiction by a preponderance of the evidence. VS Ltd. P'ship. v. Department of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000); Richardson v. BNSF Ry. Co., 2 F.4th 1063, 1067 (8th Cir. 2021).

Moreover, a district court may dismiss an action for lack of subject matter jurisdiction where the claims are "wholly insubstantial and frivolous" or otherwise completely devoid of merit. Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998); see e.g., Fuller v. Madson, No. 23-cv-3467 (JWB/LIB), 2023 WL 9375355, at *2 (D. Minn. Dec. 13, 2023), report and recommendation adopted, 2024 WL 249681 (D. Minn. Jan. 23, 2024). Put differently, a court may dismiss an action for lack of subject matter jurisdiction where the entirety of the action is frivolous. See, e.g., Steel Co., 523 U.S. at 89; Mallard v. U.S. Dist. Court, 490 U.S. 296, 307–08 (1989); Davis v. State of Minnesota, No. 19-cv-496 (WMW/LIB), Order [Docket No. 15] (D. Minn. July 26, 2019). A case is frivolous when "'it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)); see, e.g., Aziz v. Burrows, 976 F.2d 1158, 1158 (8th Cir. 2002).

In considering a motion to dismiss aimed at a pro se complaint, the Court must "liberally construe[]" the pro se complaint because "a pro se complaint, however inartfully pleaded, must be held to less stringent standard than formal pleadings drafted by lawyers." Erikson v. Pardus, 551 U.S. 89, 94 (2007); see Sorenson v. Minnesota Dep't of Corr., No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012) (citing Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980)). "Although pro se pleading are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); see Martin, 623 F.2d at 1286. Pro se complaints "still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). Proceeding pro se does not alleviate a litigant of their burden of establishing that the Court maintains the requisite subject matter jurisdiction necessary to adjudicate the litigant's claims. See e.g., Fuller, 2023 WL 9375355, at *2.

**B.  Analysis**

Before the Court may consider any of the merits of Plaintiff's claims, the Court must ensure that it maintains the requisite subject matter jurisdiction to adjudicate Plaintiff's claims.

**1.  Rooker-Feldman Doctrine**

"The basic theory of the Rooker-Feldman doctrine is that only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state-court judgment." Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cty. v. Beebe, 578 F.3d 753, 758 (8th Cir. 2009) (cleaned up). Courts apply the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The doctrine "does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings." Hageman v. Barton, 817 F. 3d 611, 614 (8th Cir. 2016) (citations omitted). A party who was unsuccessful in state court thus "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violated the loser's federal rights." Johnston v. DeGrandy, 512 U.S. 997, 1005–1006 (1994) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)).

The Rooker-Feldman doctrine "extends not only to 'straightforward appeals [of state court decisions] but also [to] more indirect attempts by federal plaintiffs to undermine state court decisions.'" Ballinger v. Culotta, 322 F.3d 546, 547–48 (8th Cir. 2003) (quoting Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000)). Thus, the doctrine also deprives federal district courts of jurisdiction over claims that are "inextricable intertwined" with claims adjudicated in state court. Feldman, 460 U.S. at 482 n. 16. "A general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000) (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987)); see Canal Capital Corp. v. Valley Pride Pack, Inc., 169 F.3d 508, 512 (8th Cir. 1999). These inextricably intertwined cases include circumstances where a plaintiff has lost claims in state court and attempts to recast those claims as constitutional violations under § 1983 in federal court. See, e.g., Prince v. Arkansas Bd. of Examiners in Psychology, 380 F.3d 337, 340 (8th Cir. 2004); Enyeart v. Minnesota, 408 F. Supp. 2d 797, 803 (D. Minn. 2006), aff'd, 218 F. App'x 560 (8th Cir. 2007).

In the present case, Plaintiff's claims fall squarely within the Rooker-Feldman doctrine because his claims here (that state Defendants lack authority to assess taxes against Plaintiff's real property) implicitly asks this Court to overturn judicial decisions of the Minnesota State Court regarding Otter Tail County's authority to assess taxes against Plaintiff's real property. The issue of whether Otter Tail County has the authority and jurisdiction necessary to assess taxes against Plaintiff's real property has already been adjudicated repeatedly in Minnesota State Court prior to Plaintiff's filing of the present action in this federal court. Even liberally construing his pleadings, Plaintiff's claims in the present case can only succeed if this Court were to find that the state court wrongly decided and handled the issue before it.

For example, Plaintiff here argues that he is entitled to relief because Otter Tail County has failed to "substantiate" its claim of taxation authority "with any type of jurisdictional statements or substantiating evidence that the State or County has personal, subject matter and territorial jurisdiction authority over the Plaintiff or his private property." (Compl. [Docket No. 1] at 7). The Minnesota State Court has, however, already considered Plaintiff's substantiation arguments and concluded that Plaintiff's real property is subject to taxation by Otter Tail County. See Menze v. Otter Tail County, 56-cv-22-718, Order [Docket No. 28] (Minn. D. Ct. Sept. 26, 2022); Menze v. Otter Tail County Auditor-Treasurer, 56-cv-23-582, Order [Docket No. 12] (Minn. D. Ct. April 13, 2023); Otter Tail County Auditor-Treasurer v. Menze, 56-cv-23-844, Order [Docket No. 15] (Minn. D. Ct. June 12, 2023).

Simply put, it is not possible for this Court to award Plaintiff his requested relief without this Court first determining that the Minnesota State Court wrongly decided the issue of whether Plaintiff's real property is subject to taxation by Otter Tail County.

Under the circumstances of the present case, the Rooker-Feldman doctrine unequivocally precludes this Federal District Court from taking such action. This remains true regardless of whether Plaintiff seeks relief in the form of monetary damages or injunctive relief.

For all the reasons discussed above, Plaintiff's claims here are barred by the Rooker-Feldman doctrine. See Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000). Because Plaintiff's claims are barred by the Rooker-Feldman doctrine this Court lacks the subject matter jurisdiction necessary to adjudicate Plaintiff's claims. This lack of requisite subject matter jurisdiction represents a sufficient, independent basis upon which to recommend the dismissal of Plaintiff's Complaint in its entirety.

### 2. Frivolity

Although the Rooker-Feldman doctrine alone provides a sufficient basis upon which to recommend the dismissal of the present action based on a lack of subject matter jurisdiction, the Rooker-Feldman doctrine is not the only well-established legal doctrine which deprives this Court of the requisite subject matter jurisdiction necessary to adjudicate Plaintiff's purported claims.

As noted above, it is well-established that an action may be dismissed for lack of subject matter jurisdiction where the claims are "wholly insubstantial and frivolous" or otherwise completely devoid of merit. Steel Co., 523 U.S. at 89; see e.g., Fuller, 2023 WL 9375355, at *2. Dismissal of a case for lack of subject matter jurisdiction is proper due to the inadequacy of the federal claim "when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Steel Co., 523 U.S. at 89. A case is frivolous when "'it lacks an arguable basis either in law or in

fact.'" Denton, 504 U.S. at 31 (quoting Neitzke, 490 U.S. at 325); see e.g., Aziz, 976 F.2d at 1158.

In the present case, Plaintiff's purported claims, even when liberally construed in his favor, lack any arguable basis in law or fact. Although Plaintiff purports to raise several claims bearing different titles, each of Plaintiff's claims is merely a recasting of his assertion that Otter Tail County lacks the authority to assess taxes on Plaintiff's real property without Otter Tail County first substantiating its authority to tax said real property. (See Compl. [Docket No. 1]). In support of this assertion, however, Plaintiff relies on only sovereign-citizen-based arguments[6] which have been universally found to lack any merit. See, e.g., United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993); Fuller v. Madson, No. 23-cv-3467 (JWB/LIB), 2023 WL 9375355, at *5 (D. Minn. Dec. 13, 2023), (citing United States v. Studley, 783 F.2d 934, n. 3 (9th Cir. 1986); United States v. Mitchell, 405 F. Supp. 2d 602, 605 (D. Md. 2005); Bryant v. Washington Mut. Bank, 524 F. Supp. 2d 753, 758–59 (W.D. Va. 2007), aff'd, 282 F. App'x 260 (4th Cir. 2008); Gravatt v. United States, 100 Fed. Cl. 279, 283 (2011)), report and recommendation adopted, 2024 WL 249681 (D. Minn. Jan. 23, 2024); Paul v. New York, No. 13-cv-5047 (SJF/AKT), 2013 WL 5973138, at *3 (E.D.N.Y. Nov. 5, 2013).

While Plaintiff does not label his arguments as "sovereign citizen" arguments, the purported legal theories he relies upon and his interpretations of various cases, laws, and legal theories in his pleadings are the exact type of assertions and arguments underlying "sovereign citizen" arguments. (See, e.g., Compl. [Docket No. 1] at 4) (asserting that "Plaintiff is a private

---

[6] Adherents of sovereign-citizen-based arguments "believe that they are not subject to governmental authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." Gravatt v. United States, 100 Fed. Cl. 279, 282 (2011) (citation omitted). Many "courts have encountered these claims before, namely, in the antics and writing of extremist who wish to dissociate themselves from the social compact undergirding this nation's democratic institutions, including the independent judicial branch of government." United States v. Mitchell, 405 F. Supp. 2d 602, 605 (D. Md. 2005).

13

man that has made and continues to make the following statement by free will and accord to all interested persons and those attempting to administer the Plaintiff's property: 'I, Aaron 0. Menze as a pacifist by convenience and consistency, am who I am, all present and accounted for from the very beginning (zygote) to the very end (my last breath). My land is held by allodium trust between my creator and myself with the exclusive right of administration. No portion thereof has been abdicated, granted, or relinquished to anyone else'" and further asserting that "Plaintiff retains all [100%] equity to his property making him the absolute and exclusive owner of himself, fruit of his labors, and all property obtained through the voluntary conversion of one form, type or species of property into another property." (brackets in original)). Although Plaintiff may not label himself as a "sovereign citizen," he relies on the same arguments as the typical "sovereign citizen" and his Complaint equally lacks any arguable basis in law or fact because it is "replete with the" same "legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign-citizen movement." See Patten v. Lown, No. 2:20-cv-605 (JLB/MRM), 2021 WL 236630, at *2 (M.D. Fla. Jan. 25, 2021).

Moreover, many of the exact arguments raised by Plaintiff, as well as, numerous variations of the arguments have been routinely and correctly rejected as "meritless." See, e.g., United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993); United States v. Kruger, 823 F.2d 587, 587–88 (8th Cir. 1991); United States v. Roberts, No. 4:12-cv-328, 2013 WL 7118117, at *3 (S.D. Iowa Feb. 26, 2013) (collecting cases); Mitchell v. Vesely, No. 5:17-cv-325, 2017 WL 11049094, at *1 (M.D. Fla. Aug. 23, 2017). Courts have expressly rejected the argument, raised by Plaintiff here, that a tax is constitutionally improper because it is a so-called "indirect tax." United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993). Courts have likewise universally rejected Plaintiff's argument that his real property is not subject to taxation because it is held in

14

"allodium trust." See, e.g., Reutov v. Am. Home Mortg. Acceptance Inc., No. 3:23-cv-01172, 2024 WL 232315, at *4 (D. Or. Jan. 22, 2024) (noting that every Court to consider the issue has rejected sovereign citizens' attempts to use "allodium" rights or "land patent" legal theories to avoid paying some financial obligation incurred upon said individual's real property); Karwel v. Cullen, No. 15-cv-597 (ORL/KRS), 2015 WL 13932180, at *1 (M.D. Fla. Aug. 19, 2015).

In the present case, Plaintiff offers only sovereign-citizen-based arguments in support of his claim. Even liberally construing his pleadings in his favor, Plaintiff does not assert any claim which is even arguably meritorious. Each of Plaintiff's claims and arguments is frivolous because it lacks any arguable basis in the law. See, e.g., Denton v. Hernandez, 504 U.S. 25, 31 (1992); In re Gould, 2004 WL 720272, at *1. Put differently, Plaintiff's claims are "completely devoid of merit as not to involve a federal controversy." This too represents a sufficient, independent basis upon which to recommend the dismissal of the present action in its entirety based on a lack of subject matter jurisdiction.

Therefore, to the extent Defendants' Motion to Dismiss seeks an Order of this Court dismissing Plaintiff's Complaint, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 5], be **GRANTED**. The question remains for the Court to determine whether this recommended dismissal should be with or without prejudice.

### 3. Type of dismissal

As noted above, Defendants seek to have this case dismissed with prejudice. (See Defs.' Mem. [Docket No. 11] at 1; Proposed Order [Docket No. 13]). Defendants do not, however, offer any argument as to why this case should be dismissed with prejudice as opposed to a dismissal without prejudice. (See Defs.' Mem. [Docket No. 11]).

For all the reasons discussed above, the Court has recommended that the present action be dismissed for a lack of subject matter jurisdiction. A dismissal for want of subject matter jurisdiction is a dismissal without prejudice. Sandy Lake Band of Mississippi Chippewa v. United States, 714 F.3d 1098, 1104 (8th Cir. 2013) (affirming district court's dismissal for lack of subject matter jurisdiction but modifying the dismissal to be without prejudice); List v. Cnty. of Carroll, 240 F. App'x 155, 156 (8th Cir. 2007) (noting that a dismissal for lack of subject matter jurisdiction is a dismissal without prejudice) (citing Kahn v. Khan, 21 F.3d 859, 862 (8th Cir. 1994)).

Thus, to the extent Defendants' Motion to Dismiss seeks the dismissal with prejudice of Plaintiff's Complaint, the undersigned recommends that Defendants' Motion to Dismiss, [Docket No. 5], be **DENIED**. Instead, the undersigned recommends that Plaintiff's Complaint be **DISMISSED without prejudice**.

### III. Plaintiff's Motion for Injunctive Relief. [Docket No. 22].

Through his Motion for a Injunctive Relief, [Docket No. 22], Plaintiff seeks a "Writ of Mandamus" compelling Defendants to cease and desist their taxation of Plaintiff's real property until after Defendants have substantiated their authority to impose such taxation. Plaintiff also seeks a "Writ of Certiorari" compelling Defendants to provide a "statement of jurisdiction by which they claim a nexus or situs over the Plaintiff or his property . . . ." (Plf.'s Mot. [Docket No. 22] at 2). In support of these requests, Plaintiff proffers the same sovereign-citizen style arguments that he provided in support of the purported claims in his Complaint. (See Plf.'s Mem. [Docket No. 23]). Liberally construing Plaintiff's Motion in his favor, the Court interprets Plaintiff's Motion as seeking a preliminary injunction.

When considering a motion for a temporary restraining order or preliminary injunction, the Court considers four factors: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest. S.J.W. ex rel Wilson v. Lee's Summit R7 Sch. Dist., 696 F.3d 771, 776 (8th Cir. 2012) (citing Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981)); Tom T., Inc. v. City of Eveleth, No. 3-cv-1197 (MJD/RLE), 2003 WL 1610779, at *3 (D. Minn. Mar. 11, 2003); Watts v. Fed. Home Loan Mortgage Corp., No. 12-cv-692 (SRN/JSM), 2012 WL 1901304, at *3 n.3 (D. Minn. May 25 2012) (citing S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989); Jackson v. Nat'l Football League, 802 F. Supp. 266, 229 (D. Minn. 1992)); Callerons v. FSI Int'l, Inc., No. 12-cv-2120, 2012 WL 4097832, at *2 (D. Minn. Sept. 18, 2012). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113.

Injunctive relief is extraordinary relief, and the burden of establishing the propriety of an injunction is on the movant. Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); see Roudachevski v. All-American Care Centers, Inc., 648 F.3d 701, 705 (8th Cir. 2011). A temporary restraining order or preliminary injunction cannot issue if the movant fails to demonstrate a likelihood of success on the merits. See Beeks v. CitiMortgage, Inc., No. 14-cv-4603 (MJD/HB), 2014 WL 5704205, at *5 (D. Minn. Nov. 5, 2014); Wickner v. Larson, No. 9-cv-940 (DWF/JJK), 2010 WL 98940, at *3 (D. Minn. Jan. 11, 2010); Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005).

On the first factor of whether or not to issue a preliminary injunction, i.e., probability of success on the merits, the Court in Dataphase, "rejected the notion that the party seeking relief

must show 'a greater than fifty percent likelihood that he will prevail on the merits,' holding instead that 'where the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Planned Parenthood Minn. N.D., S.D. v. Rounds, 530 F.3d 724, 731 (8th Cir. 2008) (citing Dataphase, 640 F.2d at 113). Thus, the Eighth Circuit has instructed District Courts considering this factor to query whether the moving party has a "fair chance of prevailing." Id. at 732.

In the present case, Plaintiff has failed to demonstrate that he has even a "fair chance of prevailing" on any of his purported claims. For the reasons discussed above, the Court has already concluded that this Court lacks the subject matter jurisdiction necessary to adjudicate Plaintiff's purported claims due to the Rooker-Feldman doctrine and the complete lack of merit in Plaintiff's purported claims. The Court will not repeat that analysis here. It is sufficient to state that the undersigned's recommendation that the present action be dismissed in its entirety is entirely sufficient to demonstrate that Plaintiff has failed to demonstrate he has a fair chance of prevailing on any of his claims.

Therefore, the undersigned recommends that Plaintiff's Motion for Injunctive Relief, [Docket No. 22], be **DENIED**.

IV. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss, [Docket No. 5], be **GRANTED in part** and **DENIED in part**, as set forth above;

2. Plaintiff's Motion for Injunctive Relief, [Docket No. 22], be **DENIED**; and

18

   **3.**   The entirety of the present action be **DISMISSED without prejudice**.

Dated: October 29, 2024                                                 <u>s/Leo I. Brisbois</u>
                                                                                             Hon. Leo I. Brisbois
                                                                                             United States Magistrate Judge

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).